IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

LESSIE ANDERSON, BURNICE CRETCHER
BRENDA GETER, BRENDA HARRIS, LISA
HILLMAN-JACKSON, DEXTER
JACKSON, ELLA LYONS, MATTIE
MEADOWS, DARLETTA WHITE, WANDA
COLEY, WILLIE FORD and DIANN
FREEMAN, on behalf of themselves and others
similarly situated.
     Plaintiffs,

v.             1:00-CV-166 (WLS)

CAGLE'S, INC., and CAGLE FOODS J.V.,
L.L.C.,

     Defendants.

## ORDER

Presently pending before the Court are: Defendant Cagle Foods JV, LLC's Motion to Decertify Class (Doc. No. 148); Defendant Cagle Foods JV, LLC's Motion to Sever Plaintiffs (Doc. No. 149); and Defendant Cagle's Inc.'s Motion to Decertify and/or to Sever. (Doc. No. 151). Also, pending is Defendant's motion to compel and for sanctions. (Doc. No. 146). Lastly, Plaintiffs have pending two motions to strike Defendants' rebuttal experts. (Tab 177, 179). For the reasons stated below, Defendants' Motions (Doc. Nos. 148, 149, 151) are **GRANTED**. Defendants' motion to compel and for sanctions (Doc. No. 146) is **GRANTED**. Plaintiffs' motions to strike (Doc. Nos. 177, 179) are **DENIED without prejudice**.

I.   OVERVIEW

1

On July 11, 2002, the Court granted Plaintiffs' Motion to Facilitate Court Approved Notice and conditionally certified the collective action under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") to recover allegedly unpaid hourly and overtime compensation owed for donning and doffing various permutations of protective clothing/equipment required for their jobs, removing of protective clothing/equipment prior to beginning lunch breaks and denial of full breaks and lunch periods due to the requirement that Plaintiffs remain on the line, after their break or lunch has started, until they have completed processing.  Approximately 2200 employees or former employees of Defendants Cagle Foods JV, LLC ("Cagle Foods") and Defendant Cagle's, Inc. ("Cagle's") filed consents to opt-in to this litigation.

## II.   DISCUSSION

### A.   Legal Standard

The traditional analysis for collective action treatment is divided into two stages. *See* Hipp v. Liberty National Life Insurance Co., 252 F.3d 1208, 1218-19 (11th Cir. 2001). The stage one determination is generally "made using a fairly lenient standard" because "the court has minimal evidence." Cameron-Grant v. Maxim Healthcare Services, Inc., 347 F.3d 1240, 1243 (11th Cir. 2003).  It is not until after discovery has been conducted, "when the court has much more information on which to base its decision," that the court makes a factual determination on the similarly situated question. *Id.* A defendant may move to decertify the class if the evidence shows that the members of a conditionally certified class are not "similarly situated." Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 365 (M.D.Ala. 1999). In the second stage, the Court requires a higher level of proof than for initial conditional certification. Vaszlavik v. Storage Technology Corp., 175 F.R.D. 672, 678 (D.C.Colo. 1997). Because of the

heavier burden of proof for deciding whether the group is "similarly situated," the Eleventh Circuit has recognized that few actions will be certified at this stage. Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d at 1218.

In deciding final certification, courts have emphasized that certification as a collective action should be based on a variety of factors. Thiessen v. General Electric Capital Corp., 996 F.Supp. 1071, 1081 (D.Kan. 1998). These factors include: (1) the factual and employment settings of the individuals plaintiff, (2) the different defenses to which the plaintiffs may be subject on an individual basis, and (3) the degree of fairness and procedural impact of certifying the action as a collective action. *See* Brooks v. BellSouth Telecomm., 164 F.R.D. 561, 568 (N.D.Ala. 1995).

### B.    Legal Analysis

Defendants Cagle Foods and Cagle's move the Court to decertify the putative class. For the following reasons, the Court grants decertification because opt-in Plaintiffs are not "similarly-situated."

#### i.    Employment Setting and Factual Situation

The putative class is composed of disparate factual and employment settings and cannot continue as a collective action. In Brooks v. BellSouth Telecomm., 164 F.R.D. at 569, conditional certification was denied when extensive discovery clearly demonstrated that the proposed opt-in Plaintiffs would span separate facilities. Specifically, Cagle Foods and Cagle's maintained: (1) separate corporate and legal identities and locations, and (2) separate work forces.

##### a.    *Corporate and Legal Identities and Locations*

3

1.   <u>Cagle Foods</u>

Prior to 1993, Cagle's operated a poultry processing complex in northern Florida. Part of its operation included a small processing plant in Camilla, Georgia as well as multiple facilities in Georgia and Alabama. In March of 1993, Cagle's and Executive Holdings, L.P. ("Executive"), an entity related to one of Cagle's then existing major customers, Keystone Foods, LLC ("Keystone"), entered into a joint venture to produce chicken meat. The joint venture created an independent company, Cagle Foods, to operate the joint venture. Cagle Foods expanded the Camilla facility to include starting the integrated poultry processing complex, including a slaughtering and processing plant, a feed mill, a hatchery, live operations and numerous contract farming facilities. In April of 1995, Cagle Foods commenced operations at a newly constructed processing facility, primarily to process raw chicken product to Keystone for distribution to its major customer, McDonald's Restaurants. In the spring of 2002, the ownership structure of Cagle Foods changed when Cagle's interest was bought out by Executive and the name of the entity was changed to Equity Group-Georgia Division, LLC ("Equity-Georgia").[1] Cagle's no longer holds any ownership interest in Cagle Foods. Cagle Foods is a Delaware limited liability company which was and remains a privately traded stock company and does not publicly trade any stock or file any SEC reports.

Cagle Foods has a collective bargaining agreement with the union representing its employees, Retail, Wholesale and Department Store Union ("RWDSU") Local 938. Even during that period when Cagle's was a member of Cagle Foods, Cagle Foods' Complex

---

[1] For purposes of discussion, the Court will continue to use the name "Cagle Foods."

Manager was the chief negotiator for Cagle Foods and needed to only obtain final approval from the Steering Committee for approval of the collective bargaining agreements. The members of the bargaining committee are only employees of Cagle's Foods.

### 2. Cagle's

Since 1989, Cagle's has operated multiple poultry plants throughout Georgia and Alabama, including: Dalton, Forsyth, Macon, Pine Mountain Valley, Lovejoy, Bucknell, Perry and Atlanta, Georgia and Collinsville, Alabama as well as two facilities in Albany, Kentucky owned by a different company. Cagle's has its own hatchery and feed mill. Its live poultry operations, based in Dalton, Georgia, include facilities where: chicken carcasses are mechanically deboned and, cut-up chicken is marinated, breaded, frozen and packed. Cagle's is a Georgia corporation which is publicly traded with a corporate headquarters in Atlanta, Georgia. At all relevant times to this action, Cagle's has not identified Cagle Foods as a subsidiary nor has it otherwise been listed as one of Cagle's facilities, as evidenced by its 2001 Annual Report.

Most of the Cagle's poultry facilities do not have collective bargaining agreements with their employees. Although Cagle's Pine Mountain Valley and Macon plants have collective bargaining agreements with RWDSU, the agreements are separate and independent between the plants. Cagle Foods has never negotiated Cagle's collective bargaining agreements.

### b. *Work Forces*

At all times relevant to this action, Cagle Foods and Cagle's have maintained separate and independent work forces.

### 1. Cagle Foods

5

Nine of the twelve original Named Plaintiffs claim to be employed by Cagle Foods. There are opt-in Plaintiffs from the following departments or areas: Maintenance, Live Receiving, Evisceration, De-Bone, Further Processing, Pack-Off, Quality Assurance, Hatchery, Data Entry, Truck Driver, Live Haul, Live Operations and $CO_2$ Technician.

### 2.   Cagle's

At the time of the filing of the action, two Named Plaintiffs worked in the Macon, Georgia live processing facility, one in the saw line of the Day Pack department and one in the De-Bone department. No longer employed with Cagle's at the time of the filing of the action, one Named Plaintiff worked in the De-Bone department of the Pine Mountain Valley, Georgia live processing facility.

### ii.   **Individual Defenses**

There are numerous and individualized defenses unique to each Defendant which cannot be addressed on a class-wide basis. Serious procedural concerns arise when the Court is faced with individual employees, such as those of Cagle Foods and Cagle's, who can assert individual defenses that would be too unruly to try as a sigle action before the Court. Thiessen v. General Electric Capital Corp., 996 F.Supp. at 1084. Specifically, those employers can assert individual defenses regarding differences in methods of compensation and required items of clothing.

#### *a.   Methods of Compensation*

At all times relevant to this action, Cagle Foods and Cagle's operate separate and independent methods of compensation. Moreover, whether considering Cagle Foods by itself or grouped with Cagle's multiple plants, there are divergent pay practices between some of the

departments in this case.

1. <u>Cagle Foods</u>

There are no consistent or overall compensation methods between the various departments. In the Evisceration and De-Bone departments, employees are paid for "line time," which is time that is measured from a specified "start time," i.e., when the first piece of product is scheduled to arrive at the first position on that line, until an "end time," i.e., when the last piece of product actually passes the first position on that line, less time for a fifteen minute paid rest break and a forty-five minute unpaid meal period. If the employees have responsibilities such as set-up or related work before regular product start time or are asked to report early or stay late, then those employees are paid from the time they clock-in to the time they clock-out.

In the Sanitation department, employees are paid by a guaranteed, incentive-based pay system and paid for eight hours daily irrespective of whether they actually work for that period of time and are generally paid overtime for any time over eight hours. Maintenance department employees are paid for a scheduled shift which is subject to supervisory edits. Feed Mill and Hatchery department employees are paid for scheduled shifts based on hours worked as recorded on individual time cards. Truck drivers and office workers are paid "clock-to-clock."

Since the joint venture was formed, all employees of the joint venture were and are employed and paid solely by Cagle Foods. Although the employees of the Evisceration, De-Bone, Sanitation and Maintenance departments are represented by RWDSU, the remaining opt-in plaintiffs have no union representation.

2. <u>Cagle's</u>

In the Dalton, Georgia feed mill, employees are compensated based on individual time cards. In the Forsyth, Georgia feed mill, employees are compensated based on individual time cards. In the Macon, Georgia live processing facility, production employees are compensated by line cards[2] and are represented by RWDSU. In the Pine Mountain Valley, Georgia live processing facility, production employees are compensated by line cards and are represented by RWDSU. Closed in March of 2001, the Lovejoy, Georgia processing facility employees were compensated based on individual time cards. Closed in August of 2000, the Bucknell, Georgia, processing facility employees were compensated based on individual time cards. In the Atlanta, Georgia, processing facility, employees are compensated based on both line cards and individual time cards. In the Collinsville, Alabama, processing facility, production employees are compensated based on individual time cards. In the Perry, Georgia, processing facility, production employees are also compensated based on individual time cards. Each plant sets its own shift start time and end time, as well as rest breaks and meal periods, with most facilities giving employees two paid rest breaks and a thirty minute unpaid meal period.

### b.   *Required Items of Clothing*

At all times relevant to this action, Cagle Foods and Cagle's have operated separate and independent operations and policies respecting time keeping and garments to be worn.

#### 1.   Cagle Foods

Cagle Foods only requires employees who work inside the production facility to wear a smock, hairnet/beardnet and ear protection. Cagle Foods requires employees to obtain a fresh

---

[2]. "Line cars" are like punch cards that keep up with production of the employee on the line, hence the name.

smock at the plant each workday.

Depending on the precise nature of the job, additional items of clothing are required. Steel mesh gloves and plastic arm guards are required in the Evisceration and De-Bone departments which are put on while the employee are being paid. Rubber gloves are required in the Further Processing department and plastic aprons and safety glasses are optional clothing items which are worn while the employee is being paid. Bump caps, rain suits, heavy rubber gloves and safety glasses are required in the Sanitation department and the employees are paid by a guaranteed, incentive-based pay system. Bump caps and safety goggles are not always required to be worn in the Maintenance department. Depending on what specific tool or piece of equipment the employee is working with, the employee may be required to wear protective gloves, welding vests, goggles or some other protective clothing which is donned and doffed while on the clock. Ear protection and non-slip shoes are required to be worn in the Feed Mill department. In the Hatchery department employees are only required to wear non-slip shoes, bur ear protection may be required in certain designated areas.

### 2. Cagle's

Most Cagle's employees are responsible for the care and maintenance of the their own required garments. In the Macon, Georgia, facility sanitation clothing is required to be on before the employees touch the product and the employees often put on and take off the equipment while walking to and from the line. Protective clothing/equipment ("PPE") is required to be on before performing tasks associated with the equipment. Employees who do not touch the product after slaughter can don and doff PPE while on the clock. Production employees working more or less than scheduled are noted by the supervisor on a report and

employees are paid based on the changed time. Maintenance employees are paid from "clock-to-clock" and no meal periods are deducted. Sanitation employees are usually paid for an eight (8) hour day.

In the Pine Valley, Georgia facility, employees are required to wear smocks, ear protection and hairnets before entering the production floor. PPE are required to be on before performing the task associated with the equipment. Some employees can don and doff PPE as they walked to the line. Any production employee working more or less than scheduled is noted by the supervisor on a report and the employee is paid for the changed time. Maintenance employees are paid from "clock-to-clock" and no meal periods are deducted. Sanitation employees are usually paid for an eight (8) hour day.

In the Lovejoy, Georgia facility, the production employees are required to wear PPE and sanitation clothing before performing the task associated with the equipment. Employees are required to be at their station at the start time, but are allowed to arrive fifteen (15) minutes late before any disciplinary action is taken. All employees ended the day at the same time, but had to wait in line to punch out on their individual punch card.

In the Bucknell, Georgia facility, the production employees are required to wear PPE and sanitation clothing before performing the task associated with the equipment. Employees are required to be at their station at the start time, but are allowed to arrive five (5) minutes late before any disciplinary action is taken. Any employee working more or less than his scheduled hours is paid accordingly, but the change is noted by a supervisor on a report.

In the Atlanta, Georgia facility, the production employees are required to wear PPE and sanitation clothing before performing tasks associated with the equipment. Employees are

required to be at their station at the start time, but are allowed to arrive five (5) minutes late before any disciplinary action is taken. Any employee working more or less than his scheduled hours is paid accordingly, but the change would is noted by a supervisor.

In the Collinsville, Alabama processing facility, production employees are required to wear smocks, ear protection and hairnets before entering the production floor. It is required that PPE be worn before working with the equipment. Some employees can don and doff PPE while on the clock. Other employees, not working on the production line, can don and doff PPE while on the clock and are not necessarily required to wear their PPE for their entire shift. Any production employee working more or less than the scheduled hours is paid accordingly, but the change is noted by a supervisor. Maintenance employees are paid from "clock-to-clock" and no meal periods are deducted. Sanitation employees are usually paid for an eight (8) hour day.

In the Perry, Georgia processing facility, production employees are required to don sanitation and PPE at the start of their shift. Other employees are expected to put on PPE before performing the task associated with the equipment; these employees can don and doff PPE while on the clock. Any production employee working more or less hours than scheduled is paid accordingly. The change, however, is noted by the supervisor on a report. Employees receive two thirty-five (35) minute breaks daily. Maintenance employees are paid from "clock-to-clock" and no meal periods are deducted. Sanitation employees are usually paid for an eight (8) hour day.

      iii.    **<u>Fairness and Procedural Concerns</u>**

Where, as here, a tenuous second-stage class exists, it has been found that fairness and

procedural considerations supported decertification of the class. *See* <u>Alexander v. Fulton County, Ga.</u>, 207 F.3d 1303, 1324 (11th Cir. 2000). Plaintiffs have alleged that Defendants, jointly and severally, violated the FLSA by failing to pay hourly and overtime compensation owed for donning and doffing various permutations of PPE on a class-wide basis. However, as Defendants have demonstrated through extensive and contentious discovery, Plaintiffs are not "similarly situated" and Defendants have not been shown to have acted jointly and severally in all relevant respects as alleged. Named Plaintiffs essentially employed by a single employer, based on the discovery before the Court, cannot fairly and adequately represent the variously assigned employees, the wide variety of work assignments and varied compensation structures affecting the purported class. Therefore, decertification is warranted.

### III.   DISCOVERY MOTIONS

Defendant has filed a motion to compel and for sanctions against the numerous opt-in Plaintiffs that have failed to engage in discovery. (Doc. No. 146, Exhibit). Over 100 opt-in Plaintiffs have utterly failed to engage in discovery, even after repeated attempts by Plaintiffs' attorneys to contact them.(Doc. No. 152). Defendants' motion has been pending since November 12, 2003, and none of the subject opt-in Plaintiffs have responded to the requested discovery. Therefore, the only appropriate sanction is to dismiss these Plaintiffs from the case. Therefore, Defendants' motion to compel and for sanctions (Doc. No. 146) is **GRANTED.**

Plaintiffs' have filed two motions to strike the testimony of Defendants' rebuttal experts. (Doc. Nos. 177, 179). As the motions are not relevant to the motions to decertify or to sever, the motions to strike (Doc. Nos. 177, 179) are **DENIED without prejudice.**

### III.   CONCLUSION

Defendant Cagle Foods JV, LLC' Motion to Decertify Class (Doc. No. 148); Defendant Cagle Foods JV, LLC's Motion to Sever (Doc. No. 149); and Defendant Cagle's Inc. Motion to Decertify and/or to Sever. (Doc. No. 151) should be, and hereby, are **GRANTED.**  Defendants' motion to compel and for sanctions (Doc. No. 146) is **GRANTED.**  Plaintiffs' motions to strike Defendants' rebuttal experts (Doc. Nos. 177, 179) are **DENIED without prejudice.**

**SO ORDERED**, this 31st day of March, 2005

_____
**W. LOUIS SANDS, CHIEF JUDGE
UNITED STATES DISTRICT COURT**